The
Chief Justice
delivered the opinion of the court
In deducing tide on the trial of this cause, the plaintiff gave in evidence a mortgage of the premises in question, mads by one Hercules Aber, on tho 15th day of February 1812.
The defendant to Impeach the mortgage, gave in evidence u commission of lunacy, and an inquisition thereon, taken on the 30th March 1824, whereby it was found'that the said Hercules Aber was on that day a lunatic, of unsound mind, and not enjoying lucid intervals, and had been in the same state of lunacy for tho space of sixteen years then last past and upwards. Notice, of the taking of the inquisition, was not gives to the holders of the mortgage, aor did they take any pan therein.
The justice who held ¡he circuit decided that the inquisition was not conclusive evidence of tho lunacy, and permitted tho plaintiff to introduce witnesses, and they were introduced by both parties, relative to the alleged lunacy of Hercules Aber,‘ aS the execution of the mortgage. The jury rendered a verdict for the plaintiff. The only questions submitted to us by the state of the ease, prepared by the parties, are, 5e whether the inquisition was conclusive, as to the lunacy f' and whether the court did ¡right in admitting the testimony cf tho plaintiffs on that point ? In Sergeson v. Sealey, 2 Atk. 412, an objection was made before Lord Hardwicke, to the reading of an inquisition of lunacy because -offered as evidence to aiFool the right of a third person, 2»d as it likewise had a retrospect of eight years* He everreká *218 the objection and said that “ inquisitions of lunacy are always admitted to be read, but are not conclusive evidence, for you may traverse them if you please.” Witnesses were examined to encounter the inquisition, and in delivering his opinion on the case he said, “ there is not at present, before me, sufficient evidence to satisfy me that he was absolutely a lunatic or non compos. When I admitted the inquisition to be read, I said it was not conclusive evidence; for it is not conclusive as to the point of time of taking the inquisition, much less as to the retrospect of eight years, for notwithstanding such inquisition,- there are numerous instances of a subsequent inquiry.” In ex parte Barnsley, 3 Atk. 184, an application having been made to Lord Hardwicke, to traverse a second inquisition,, the first having been set aside for informality, he dismissed the petition, and among other things said, “ in all these inquisitions they are not at all conclusive, for they may bring actions at law, or a bill to set aside conveyances.” In Hall v. Warren, 9 Vez. 603, a bill was filed to obtain the Specific performance of an agreement executed by the defendant, and dated the 9th March, 1802. On the 8th of May following, under a commission of lunacy, the defendant was found a lunatic from the 1st of May 1792, with lucid intervals. One ground of defence was that he was insane at the time of the contract, and a great deal of evidence was gone into oh both sides as to the state of his mind. The master of the rolls said, !< that inquisition, having been taken in the absence of the plaintiff, is not conclusive upon him. But it is evidence prima facie of the lunacy. It is however competent to third parties to dispute the fact and to maintain that, notwithstanding the inquisition, the object of it was' of sound mind at any period of the time which it covers. An opportunity it is said has already been afforded of traversing the inquisition; and undoubtedly if it would have answered the plaintiff’s purpose, merely to haye traversed and contradicted the finding, by shewing that the defendant was not a lunatic, he ought to have embraced that opportunity, and it was unnecessary to come here in the first instance. But if, as is said, he may have been a lunatic, with reference to the.general state and habit of his mind, during a considerable space of time, but with lucid intervals, I doubt very much whether that could have been got at by a traverse. It was not therefore improper for the plaintiff, under these circa ms tan *219 sés, to waive the opportunity of traversing, and to come here for an issue.” He farther observed that it was an inquiry much more fit for examination viva voce before a jury, than upon written depositions, and ordered an issue. In Faulder v. Silk, 3 Camp. 126, in debt on bond, upon a plea of non est factum, to shew the obligor to have been in a state of insanity when he executed the bond, an inquisition of lunacy, finding him a lunatic from a day prior to the date of the bond, without any lucid intervals was offered in evidence. An objection being made as res inter alias acta, Lord EUenborough said, “ although the inquisition was by no means conclusive on the trial of the issue it was admissible, and that it would be for the jury after comparing it with the other facts in the cause, to determine what weight it was entitled to.”
-Maddox in his treatise on chancery practice, states the following doctrine : “ An inquisition is only presumptive evideuce of insanity and not conclusive, so that upon an action in respect to any contractor deed, it is for a jury to determine whether at the time of executing it, the party was non compos, though by the inquisition he was found to be non compos at such period.” 2 Madd. 578.
From these citations the following conclusions are deducible.
1. An inquisition of lunacy is not conclusive against any person not a party to it.
2. 'When an inquisition is admitted in evidence, the party against whom it is used may introduce proof that the alleged lunatic was of sound mind at any period of the time covered by the inquisition. This position is indeed a corollary from the former, as it would be inconsistent to say the inquisition was not conclusive, and at the same time to refuse to receive any evidence to contradict the fact stated in it.
3. The party, against whom the inquisition is received, may impugn the finding by contrary evidence, without first pursuing, the proceder© technically called a traverse of the inquisition. If such be the rale, in the English Courts, we may with more propriety recognize it here, as we have not enacted among our laws the provision contained in the statute, 2 Ed. 6, Ch. 8, Sec. 6, on which according to some writers the proceeding by traverse in England depends at least as a matter of right.
Til® ©osas®! of the defendant in his brief» referred us ft) f *220 Phil. on Evid. 299, for the purpose of shewing that an inquisition of felo de se which carries with it a forfeiture of estate, is conclusive until traversed in the court of King’s Bench. But against whom ? The author says, Lord Coke considered it con-elusive evidence of the fact against the executors or administrators of the deceased $ that Lord Hale was of a contrary opinion ; and that it is now settled that such an inquisition may be removed into the King’s Bench, and traversed by the executors or administrators of the deceased. Nothing is said however as to the effect of the inquisition against third persons. In Page 301, Philips speaks of the inquisition of lunacy. He says it is evidence against third persons who were strangers to the proceed» ing. He does not directly say whether conclusive or prima facie, though his meaning cannot readily be misunderstood; but to support his position he cites the case, already, mentioned, of Sergeson v. Seale, in which Lord Hardwkke says it may be read, but is not conclusive. In ex parte Roberts 3 Atk. 5, in matter of lunacy, another, case referred to in the defendant’s brief, the Chancellor said s “ the. question therefore is, whether 1 shall grant leave for the lunatic to traverse or not. Upon reasonable terms I am willing to put it in some method of inquiry, and it will be for the advantage of all parties; for if. I grant the custody, the committees must bring a bill to set aside the settlement which he has made of his estate, and Dr. Finney woold have a just right to insist on the validity of it, so that an issue must be directed to try it, and such an issue would be a greater expense to the parties than a traverse, and therefore I asked whether Dr„ Finney would submit to be bound by the traverse $ for though it would be binding against Mr. Roberts, it would not be so against Dr. Finney, as to the grant of the custody of the land, who claims as a purchaser.”
From these remarks, it is clear the Chancellor held a difieren^ opinion from the proposition insisted on in the defendant’s brief, that the inquisition is conclusive until traversed in chancery and set aside; for he says Finney who claimed as the purchaser of the alleged lunatic’s estate would have a just right to insist on the validity of the conveyance to him, notwithstanding the inquisition, and that even if upon a traverse the inquisition had been confirmed he would not have been bound unless he had su5= initted to be bound by the traverso»
*221 The disastrous consequences of the retroactive operation of an inquisition, if conclusive, strongly recommend the wisdom and policy of withholding from it such influence. In its nature it is ex parte. It would be inconsistent with the common and uniform principles of jurisprudence, to suffer an act of such a nature to sweep away with irresistible force all contracts executed under whatever circumstances of solemnity, and even to abrogate tho contract of marriage, at the expense of the undefended and truly unfortunate offspring. Such is the diversity of judgment respecting the state of the mind, that on this, more than perhaps any other question, error may be anticipated from «incontroverted proofs and ex parte examinations. Joliffe would have been found of insane mind, if the witnesses to his will, and Ills dozen servants had alone testified. Lowe v. Joliffe, 1 Wm. Bl. 366. The will of John Sinnickson, instead of being ¿sanctioned by the verdict of a jury, would have been condemned, had the question of his capacity depended on the witnesses of one of the parties. Harrison v. Rowan, 8 Wash. 580. The mental capacity of Benjamin Vanclcve was proved to the satisfaction of two juries, one in this court, and one in the Circuit Court of the United States, yet was denied by a number of respectable witnesses. 2 South. 589.
Tho first question proposed to us should, in my opinion, bo answered In tho negative, the second in the affirmative, and judgment should be entered for the plaintiff cm the verdict.
Ford, J„ concurred.
Djbake, J. gave iso opinion., having been of counsel for one os lbs partios,
Judgment for tho plaintiff